CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 14 2018

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GARY DAVIS, | ) | CASE NO. 7:17CV00107 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| STEPHEN RAINES, | ) | By: Hon. Glen E. Conrad |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

The plaintiff, Gary Davis, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983, alleging that Stephen Raines, a Henry County law enforcement officer, unlawfully seized him in Franklin County and used excessive force against him, in violation of his constitutional rights. The matter is currently before the court on the defendant's motion for summary judgment, and Davis' responses thereto. After review of the record, the court concludes that the motion must be granted.

## I. Background

Raines, in the course of his more than twenty years a sergeant of the Henry County Sheriff's Office, had met Davis on several occasions.[1] In the spring of 2014, Raines was the supervisor of the Criminal Investigation Division of the sheriff's office. Some of his deputies were investigating cases in which Davis was a suspect. On May 22, 2014, an investigator emailed Raines to share information received from a confidential informant that Davis had obtained money in a burglary; that he had purchased and might be riding in a 1998 burgundy

---

[1] This summary of facts, largely undisputed except where noted, is taken from Davis' complaint and exhibits (ECF Nos. 1, 16, and 32, and Raines' affidavit (ECF No. 28-1). Davis' exhibits include an incident report that Raines prepared in June 2014 (ECF No. 32, at 25) and a transcript of Raines' testimony during a court hearing in August 2016 (ECF No. 16-1) about the Lucky 2 Market encounter with Davis in May 2014.

Ford Explorer with improper Virginia tags; that Davis was carrying a snub nose revolver likely related to a burglary under investigation; and that Davis had recently made threats to harm himself and law enforcement officers. The email also listed locations where Davis might be found. Around the same time, Raines acquired from the sheriff's office squad room a "hot sheet" that included Davis' name and photograph on a list of individuals for whom deputies were searching. Mem. Supp. Mot. Summ. J., Raines Decl. ¶ 7, ECF No. 28-1. The hot sheet warned of some outstanding warrants for Davis' arrest. On the evening of May 30, 2014, Raines separately learned that Davis had outstanding warrants for a misdemeanor charge in the City of Martinsville and for two felony charges in Henry County for drug possession and third offense domestic assault. Raines also believed that Davis was a convicted felon.

The next day, May 31, was a Saturday, and Raines was off duty and in casual clothing, without his deputy's badge or firearm. While running an errand, he stopped at Lucky 2 Market in Franklin County for a drink. As Raines opened the door of the market, Davis was walking out. Raines recognized Davis immediately, called him by his first name, and asked what he was doing there. He told Davis that Henry County had outstanding warrants for his arrest.

Davis walked out of the store and around Raines, "mumbling . . . that he was there to pick something up." Id. at ¶ 16. Raines believed during this encounter that Davis recognized him—Davis called him "Raines" at one point. Id. at ¶ 17. At the mention of warrants, Davis said that he had "taken care of" them. Id. at ¶ 18. Raines said he "needed to call dispatch to confirm" and began dialing the number on his cell phone. Id. at ¶¶ 18-19. He told Davis that "he needed to wait for a deputy to arrive." Pl.'s Resp. Ex. B, ECF No.32.

Meanwhile, Davis "began walking aimlessly around the parking lot [and] motioned toward a burgundy Ford Explorer parked in the lot." Raines Decl. at ¶ 20. He "said something to the effect of 'come on, Raines, we've been friends for years, don't do me like this.'" Id. When Davis began walking toward the Explorer, Raines "stepped in front of him and asked him to wait until [Raines] could get in touch with dispatch or an officer arrived." Id. at 21. Raines said that they "were going to wait for a deputy to arrive." Pl.'s Resp. Ex. B, ECF No. 32. Davis walked around Raines and around the vehicle, stating, "man don't do this" and "you can't do this to me." Id. Raines said again that they "were going to wait for a deputy." Id.

From the other side of the car, Davis said he needed to go get a friend from inside the store and walked in that direction. Raines was still on the phone, but was concerned for the safety of bystanders, so he walked toward the store, too. He "put his foot in front of the door not allowing Davis to open it all the way." Pl.'s Resp. at Ex. B. According to Davis, Raines stepped in front of him to block his path toward the market, "placed his foot in front of the door thereby using bodily force to block [Davis'] freedom of movement and in the same instance, smashing [Davis'] hand in the door causing physical injury."[2] Pl.'s Resp. at 9-10. Davis claims that Raines "slam[ed] the entrance door against [his] left hand preventing [him] to enter and causing physical injury," including "numbness, sharp pains, and lack of grip" in his left hand. Compl. 3, 5, ECF No. 1.

After the door closed, Davis stepped back. Raines then opened the door and identified himself as a Henry County Deputy Sheriff to the people inside: David Cannaday and Tomeka Chrisjohn. Raines asked them to stay inside the store for their safety because he believed that law enforcement had outstanding warrants for Davis' arrest.

---

[2] Raines denies that the door closed on Davis' hand.

3

Again, Raines asked Davis, who was behind him, to wait while he confirmed the status of the warrants. The two men walked away from the store, and Davis asked Raines several times "please don't do this to me." Raines Decl. at ¶ 23. Davis told Raines that he wanted to give his keys to his friend in the store. Raines told him they "were not going anywhere until a deputy showed up." Pl.'s Resp. at Ex. B.

Despite Raines' warning, Cannaday and Chrisjohn had stepped outside the market. Seeing them, Davis tried to throw his keys to Cannaday, but the keys landed on the roof of the market. Davis dropped a plastic bottle of tea he was holding and ran toward the highway. Raines picked up the bottle and threw it at Davis, hitting the Lucky 2 Market sign about 40 feet away. Raines yelled "stop" and started to chase Davis, but stopped. Raines Decl. at ¶ 24. At the market's sign, Davis also stopped and turned toward Raines. Davis "had his right hand pulled back towards his belt line under his shirt" and "was holding a black semi-automatic pistol." Id. at ¶ 25-26. He told Raines to "leave him the fuck alone" and "get out of here." Id. at 26. Raines told Davis that he "was attempting to confirm the warrants and that he needed to stay there." Pl.'s Resp. at Ex. B. Davis then ran on down the highway. Raines did not try to pursue him. He confirmed the outstanding warrants with the Henry County dispatcher and then reported the incident to the Franklin County Sheriff's Department.

Raines states that "[a]t no point during our interaction did I ever put my hands on Davis. No part of my body ever touched his and I never came into physical contact with him. . . . I never told him he was under arrest, in custody or not free to leave." Raines Decl. at ¶ 30. The encounter lasted "five minutes or less." Id. at ¶ 33.

Franklin County deputies arrested Davis on June 1, 2014, at the Lucky 2 Market. Davis later pleaded guilty to the Henry County felony charge for possession of methamphetamine and was sentenced to three years and three months in jail, with three years suspended on the condition of five years good behavior. Davis also pleaded guilty and was convicted of two felonies in Franklin County related to the events at issue in this civil action—possessing a firearm as a convicted felon and brandishing the firearm. For these offenses, Davis was sentenced in April 2016 to five years and twelve months in jail, with the sentences suspended "upon time served" awaiting trial. Mem. Supp. Mot. Summ. J. Ex. D, ECF No. 28-1.

Davis filed this § 1983 action in March 2017, asserting that: (1) Raines' actions constituted (a) an unreasonable seizure and (b) excessive force, in violation of the Fourth Amendment. Davis also asserted two supplemental state law claims: (2) Raines, a Henry County officer, detained Davis in Franklin County, outside of his jurisdiction, in violation of Virginia Code Ann. § 19.2-250(A); and (3) Raines' actions constituted state law torts of assault, battery, and abduction. Raines has filed a motion for summary judgment supported by affidavits and documentation, and Davis has responded, making the motion ripe for decision.

## II. Discussion

### A. Standards of Review

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only [material] disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The court

must view the record as a whole and draw all reasonable inferences from the facts in the light most favorable to Davis, as the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Davis "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[3] Anderson, 477 U.S. at 248.

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). Thus, to survive summary judgment on his § 1983 claims, Davis must present disputed facts showing that Raines, although off duty, took actions "under color of state law" that violated Davis' constitutional rights to be free from unreasonable seizure and/or excessive force. Id.

B. Actions under Color of State Law

Raines argues that as an off-duty Henry County officer acting outside of Henry County, he was acting as a private citizen and not under color of state law when he encountered Davis at the Lucky 2 Market. On that basis, Raines argues that Davis has failed to establish the threshold "state action" requirement of his § 1983 claims. The court cannot agree.

"If an individual is possessed of state authority and purports to act under that authority, his action is state action." Griffin v. Maryland, 378 U.S. 130, 135 (1964). On the other hand, "[t]he color of law [or state action] requirement excludes from the reach of § 1983 all merely private conduct, no matter how discriminatory or wrongful." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). Thus, the court must decide whether an off-duty police officer's "private actions" have a "sufficiently close nexus with the State to be fairly treated as that of the State itself" so as to constitute state action under § 1983. Id. Reaching this determination "is a

---

[3] The court has omitted internal quotation marks, alterations, and citations here and elsewhere in this opinion, except where otherwise noted.

matter of normative judgment, and the criteria lack rigid simplicity." Id. The court must look to the "nature of the act performed" and the circumstances surrounding it to determine whether it qualifies as state action. Revene v. Charles Cty. Comm's, 882 F.2d 870, 872 (4th Cir. 1989); Rossignol, 316 F.3d at 527 n.1 (noting courts' review of "the totality of circumstances that might bear on the question of the nexus between the challenged action and the state"); Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995) ("Whether a police officer is acting under color of state law turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties.").

Courts have recognized various factors as weighing for or against a finding of state action. The "outward indicia suggestive of state authority—such as being on duty, wearing a uniform, or driving a patrol car" are relevant to the inquiry, but "are not alone determinative." Revene, 882 F.2d at 872. "Likewise, a mere assertion that one is a state officer does not necessarily mean that one acts under color of state law." Gibson v. City of Chicago, 910 F.2d 1510, 1516 (7th Cir. 1990). The state action nexus may arise where the defendant's public office provided the motivation for his actions or those actions are "linked to events which arose out of his official status," rather than arising "out of purely personal circumstances." Rossignol, 316 F.3d at 524. Another factor may be whether the individual's identity in the community as a police officer and the apparent authority that role carried facilitated his actions—"enabled [him] to execute [his] scheme in a manner that private citizens never could have." Id. at 526.

Raines argues that his actions were similar to those of the defendant officer in Nexus Servs., Inc. v. Vance, No. 5:17-CV-00072, 2018 WL 542977, at *1 (W.D. Va. Jan. 24, 2018) (Urbanski, J.). Vance, the defendant in the Nexus case was an off-duty police officer who drove her personal vehicle around the Nexus campus while wearing a police polo shirt, a gun belt, and

a badge around her neck, pretending to be interested in health care services. Id. In fact, the officer was simply gathering information about the campus at the request of her acquaintance, who was a former Nexus employee. Id. The court found no state action because: the motivation for the officer's action was purely private, unrelated to her official duties as a police officer; any private individual could have accomplished the same actions in the same manner; and Vance's status as an officer did not facilitate her actions in any way. Id. at *4.

The court does not find Raines' actions to be analogous to the Nexus case. Unlike the officer in the Nexus case, Raines' off-duty, private actions did not arise from purely personal circumstances and desires. Raines' motivation to detain Davis was clearly linked to his position as a police investigation supervisor, with access to information and documents in the sheriff's office that no private citizen could have known. Indeed, the private email about Davis having purchased a particular kind of vehicle, being armed, and having made threats to harm himself or law enforcement officers directed Raines' actions throughout the encounter with Davis. In addition, Davis does not deny that he knew and recognized Raines as a police officer, despite the lack of uniform and badge. Davis also responded to Raines based on that personal history, negotiating with the officer while wandering around, instead of simply leaving the area. As such, Raines' identity as an officer enabled him to detain Davis more effectively than any private citizen could have. Therefore, the court concludes that Raines' conduct bore a "sufficiently close nexus with the State to be fairly treated as" actions "under color of state law" for purposes of § 1983. Rossignol, 316 F.3d at 523.

### C. No Unreasonable Seizure

"[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person" within the meaning of the Fourth Amendment." Terry v.

Ohio, 392 U.S. 1, 16 (1968). It is undisputed that Raines repeatedly told Davis to wait, that he needed to stay at the location, while Raines checked the status of the warrants and arranged for another officer to arrive. It is also undisputed that Raines placed his body to block Davis' path as he tried to go to his vehicle and to retrieve his friend to leave the area. On these facts, the court will assume, for purposes of this opinion, that Raines' actions constituted a seizure. The Fourth Amendment, however, protects only against unreasonable seizures, prompting the court's next inquiry. In determining whether Raines' actions in restraining Davis' freedom to leave were reasonable, the "inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Id. at 19-20.

To "stop and briefly detain a person for investigative purposes," an officer need only have "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989). To establish reasonable suspicion, the officer may rely on his own observations, knowledge, and information provided by a known third party informant. Adams v. Williams, 407 U.S. 143, 146 (1972); Karadi v. Jenkins, 7 F. App'x 185, 191-92 (4th Cir. 2001) (finding that first hand description from officer's professional associates of suspect's suspicious behavior provided officer with legitimate, articulable suspicion sufficient to justify his initial detention of suspect for shoplifting). Raines had recently gathered information about outstanding warrants on Davis, although Davis claimed otherwise. Raines also knew from his investigator's email about Davis' threats and possession of a firearm. The

court finds this knowledge sufficient to support a reasonable suspicion of Davis' involvement in criminal activities, past and/or potential, to justify the investigative stop that Raines made.[4]

Thus, finding that Raines' initial stop was reasonable, the court must "next address whether the detention was reasonably related in scope to the circumstances that justified the initial interference with Davis' freedom of movement. See Florida v. Royer, 460 U.S. 491, 500 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."). Moreover, "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Id. at 500. Raines detained Davis no longer than it took to verify with dispatch that warrants for arrest were still outstanding. Raines was on his cell phone during the entire encounter, which lasted no more than five minutes. Davis does not present any evidence suggesting that such an inquiry would normally take less time or that Raines interrupted his confirmation attempt to pursue other, unrelated activities to lengthen the stop without legitimate cause. Moreover, Raines' actions to discourage Davis from entering the vehicle or entering the market building were necessary to keep him from leaving the scene while Raines confirmed the status of the warrants. Thus, the court finds no disputed fact showing that Raines exceeded the scope of the investigative purpose for that stop. To the extent Davis claims that Raines unreasonably seized him at the Lucky 2 Market, Raines is entitled to summary judgment as a matter of law.

---

[4] Moreover, Davis was ultimately convicted on one of the arrest warrants outstanding against him on the day when he encountered Raines. "[T]he existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest." Biddle v. Martin, 992 F.2d 673, 678 (7th Cir. 1993).

10

### D. No Excessive Force

"[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Id. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. The court must consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Thus, "force is not excessive if it is objectively reasonable under the circumstances facing the officer." Karadi, 7 F. App'x at 195.

A reasonable officer in Raines' position had ample evidence supporting a conclusion that some use of force was justified to detain Davis. Raines knew that felony arrest warrants had been issued for Davis (one for assaultive behavior), that he was reportedly armed, that he had threatened violence, and that he had talked of self-harm, suggesting some mental instability. Davis' behavior moving restlessly about the market area also suggested that he was upset about being recognized as a criminal with outstanding warrants and did not intend to wait for Franklin County law enforcement to arrive. Given these facts, when Davis tried to enter the market building, an officer in Raines' circumstances could reasonably have concluded that blocking the door was an appropriate use of force to ensure the safety of others inside the store. Davis alleges that Raines "slammed" his hand in the door. Compl. 3, ECF No. 1. Davis presents no evidence to support this accusation that Raines purposefully used force to cause him harm, however. The court finds no genuine issue of disputed fact on which Davis could persuade a fact finder that

Raines used more force than was objectively reasonable under the circumstances he faced, and that Raines is entitled to summary judgment as a matter of law on Davis' excessive force claim.[5]

### III. Conclusion

For the reasons stated, the court concludes that the defendant's motion for summary judgment must be granted as to all claims under 42 U.S.C. § 1983. Furthermore, the court declines to exercise supplemental jurisdiction over the supplemental state law claims that Davis raises. See 28 U.S.C. § 1367(c). The court will dismiss all such claims without prejudice. An appropriate order will issue herewith.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendant.

ENTER: This 14th day of August, 2018.

_____
Senior United States District Judge

---

[5] Raines argues that Davis' § 1983 claims for damages related to the use of force are barred because Raines had probable cause to arrest Davis, and the later criminal proceedings based on the parties' encounter at Lucky 2 Market did not terminate in Davis' favor. See Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration."). Raines has not presented evidence, however, that the encounter with Davis and the charges that stemmed from it are related in any way to Davis' current confinement. Thus, he has not established that Davis' claims are barred under Wilkinson.